### PEOPLE v. YOSKOW.

(Supreme Court, Appellate Division, First Department.    January 11, 1907.)

HOMICIDE—MURDER—EVIDENCE.

Evidence on a prosecution for murder *held* sufficient to sustain a conviction in the second degree.

Appeal from Court of General Sessions, New York County.

Meyer Yoskow was convicted of murder in the second degree, and appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Lewis Stuyvesant Chanler, for appellant.

Robert C. Taylor, for respondent.

SCOTT, J. The appellant was convicted of murder in the second degree in the Court of General Sessions of the Peace. The case is barren of exceptions raising any question of law. The appellant bases his appeal upon the contention that, on the whole, the defendant's evidence was more worthy of belief than that of the people, and upon the further contention that the trial judge and the counsel who defended the appellant at the trial misconceived the true theory of the facts upon which the defense should have been predicated.

The defendant kept a billiard or poolroom on Third avenue which was apparently frequented by young men and boys of the character commonly known as "tough." The deceased frequently resorted to the saloon, and on occasions had been riotous and destructive, breaking the pool tables and implements of the game. On the night of the shooting, Flynn, the man who was killed, had played pool in the room, and had gone out, leaving his overcoat behind him. Later he returned for his coat and the shooting then took place. The story told by the people's witnesses was that, while Flynn had been out of the room, two men named Casey and Luizzi had come in and commenced playing pool at the table nearest the entrance; that Flynn passed them in going to the back of the room for his overcoat, and was obliged to repass them in order to leave the room; that he had put on his coat and was going out when Luizzi struck him on the head with the heavy end of the cue, saying that he had waited for him (Flynn) and was going to fix him; that Flynn fell and Luizzi beat and kicked him; and that the defendant then came up and either kicked or jumped on Flynn and

shot him as he lay on the floor. Some of the witnesses say that defendant spoke to Flynn saying, in effect, that the latter had wrecked his place and that he (defendant) would fix him. This general story of the shooting was told by a number of witnesses who were present. The defendant told how Flynn wrecked the room on a previous evening and had done other damage and that he and Flynn had had some words about it; that on the night of the homicide, immediately before it occurred he was standing in the front of his room talking to some young men when Flynn came in; that he asked Flynn why he did not stay away, to which the latter returned a rough reply; that shortly afterwards a sudden row broke out in the saloon and he rushed to the back of the room and took a revolver out of a box; that, as he went, some of the men present tried to strike him; that he heard threatening cries directed towards himself; that after he had procured the revolver he went again to the front of the room, and as he did so a young man named Savarese was pushed against him; that he hit Savarese with the revolver and saw Flynn coming towards him threatening him; that he was about to strike again at Savarese when the revolver went off and the next thing that he saw was that Flynn lay upon the floor. He denied that he had shot Flynn while he lay on the floor, or that he had aimed the revolver at Flynn at all, or that he had either kicked Flynn or jumped on him. He was corroborated to some extent by his brother, and there was evidence of his previous peaceable reputation.

The testimony presented a sharp conflict as to how the shooting came about, and the jury were certainly entitled to believe, as they evidently did, the account given by the people's witnesses. As to the supposed misconception of the true theory of defense on the part of the court and counsel, we have been unable to discern it. The view of the case insisted upon by the counsel at the trial was that defendant had been put in such danger as to his person and property as to justify him in arming himself with a view to protecting himself; that he was justified in using such force as was necessary to effect that end; and that the pistol went off unintentionally or accidentally while he was defending himself with it by using it as a club. Counsel developed this theory of defense by a series of requests to charge which were not only accepted and charged by the court, but were charged before the general charge was made, thus giving the jury at the very outset the defendant's theory of his defense couched in the language of his counsel. Of course the presentation of this defense rendered it proper that the court should instruct the jury as to when and under what circumstances a man may resort to violent and deadly means for his self-protection, and this the learned judge did temperately and accurately. Upon the whole case, we are of the opinion that the defendant had a fair trial; that the testimony offered on behalf of the people was such as the jury was justified in believing, and that, being believed, it amply supported the verdict.

The judgment must be affirmed. All concur.